# REPORTS OF CASES ADJUDGED

## IN THE

# SUPREME COURT OF PORTO RICO.

GONZÁLEZ v. GROMER.

APPEAL from the District Court of San Juan.

No. 393.—Decided January 17, 1910.

TREASURER OF PORTO RICO—CIRCULARS—ADDITIONAL TAXATION.—Section 227 of the Political Code empowering the Treasurer to make regulations and orders and to issue instructions, does not authorize him to impose additional taxes upon the taxpayers.

ID.—COLLECTOR OF REVENUES—DELINQUENT TAXPAYER—COLLECTION OF FEES FOR SERVICE OF NOTICE.—Collectors of revenues cannot collect an additional amount from a delinquent taxpayer for the service of notice, inasmuch as the law otherwise provides for their compensation.

ID.—DELINQUENT TAXPAYERS—COLLECTOR OF TAXES—PENALTIES AND COSTS.— Sections 336 and 339 of the Political Code provide for the collection of taxes, penalties and costs, and refer to costs in attachment proceedings which may be prosecuted in accordance with the provisions of the Political Code; but no provision is made therein for collectors' fees.

ID.—COSTS—MEANING THEREOF.—In the absence of an express provision of law to the contrary the word ''costs'' means the costs of a judicial proceeding.

The facts are stated in the opinion.

*Mr. José E. Benedicto* for appellant.

*Mr. Jesús M. Rossy, fiscal,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

This is an appeal from an order of the District Court of San Juan denying an application for an injunction. The complaint sets forth that a certain piece of property belonging to complainant had been attached at the order of the Treasurer of Porto Rico to recover the sum of $40 for taxes due for the first half of the fiscal year, and the sum of $1.60 for

delinquent charges.  He was notified of the attachment on November 25, 1908, and on December 3, 1908, he went to the office of the internal revenue collector of this city and handed him the sum of $41.60 which had been claimed of him as heretofore set out; but that this official refused to accept said sum without just cause, alleging that the complainant should also pay the sum of $1 for expenses due to the collecting agent; that the complainant not finding any reason therefor in the law, refused to pay said sum, and as the collector refused to accept the $41.60 so offered, he told him that he would make the proper judicial deposit; that on December 7, the complainant deposited the said sum of $41.60 in the municipal court of the city of San Juan; that in spite of the Treasurer being notified of such deposit the attachment proceedings were continued, a notice of the attachment having been sent to the registry of property for inscription with respect to a farm of the complainant, which was described in the complaint; that on the day before the filing of the complaint he went to the internal revenue collector and showed him a certificate of deposit given him by the municipal court and asked him to send the proper notice to the registry of property to cancel the annotation of the said attachment, which the collector absolutely refused to do.

The complaint goes on to allege that great damages would result to the complainant as the property was sold without legal justification therefor, inasmuch as the complainant was ready to pay into the Insular Treasury the amount that was owing, having deposited the same, and that other damages might be caused to the petitioner, and that the petitioner was without an adequate remedy at law.

The defendant, upon being cited to appear to show cause why the injunction should not be issued, admitted all the essential facts of the complaint, but set out that the cost of such attachment fixed by circular No. 59 of October 11, 1907, of the Treasury Department, amounted to $1 and that said

dollar was a cost authorized by law which should have been satisfied by the complainant.

The court, after a hearing, denied the injunction.

The question presented for decision is, whether the Treasurer of Porto Rico had any warrant of law to impose this charge of $1. The *fiscal* of this court cites us to page 812 and following of volume 27 of the second edition of the American and English Encyclopedia of Law to support the contention that the right to fix the compensation of collectors may be delegated. This is certainly true; but the same citation is authority to the effect that the manner of its delegation depends upon the construction of the statute itself. Black on Tax Titles, second edition, paragraph 235, is to the same effect.

The Government contends that such authority is given by virtue of section 23 of the Act of March 9, 1905, Laws of 1905, page 173. But this was an act to amend Title IX, Chapter II of the Political Code and relates almost exclusively to excise taxes and by its terms has no application here.

Section 327 of the Political Code provides:

"The Treasurer shall have authority to issue all such regulations, orders and instructions as may be required for carrying out the provisions of this title, and such regulations, orders and instructions, when duly issued, shall have all the force of law."

But we do not see what authority this gives the Treasurer to fix any additional charge on a taxpayer or to make the taxpayers pay the compensation of collectors in any manner not directly established by the Legislature. In point of fact the collectors of each district must have their compensation fixed by law. Act 329 of the Political Code, as amended by Act of March 14, 1907; and the particular amount is fixed by each appropriation bill. *Expressio unius est exclusio alterius.*

The penalty that a delinquent taxpayer may have to pay is fixed by section 330 of the Political Code at one per cent a month.

Section 336 of the Political Code as amended by the Act of March 14, 1907, provides:

"Immediately upon the receipt of the written consent of the Treasurer, the collector or agent shall make out a written notice of attachment of the personal property of the delinquent taxpayer, which notice shall contain the amount of the delinquent taxes and the interest provided for by section 330. The said attachment shall be enforcible as soon as notice thereof shall have been served by leaving a copy thereof with the debtor himself or any member of his family or attendants of legal age, and record of such service shall be noted down by the collector or agent for subsequent action. When the collector or agent fails to find any member of said debtor's family or attendants, he shall call in two neighbors as witnesses of the service of the notice of attachment, and he shall leave said notice in the hands of said witnesses, or, if no witnesses be found willing to receive the notice, the same shall be posted or attached to the goods, chattels or other property of said debtor, whereupon the notice shall be considered as having been served upon the debtor. If at the expiration of 10 days after the service of such notice the said taxes and extra charges provided for by section 330 shall not have been paid, the collector, or agent, shall proceed to execute the attachment and sell the personal property of said debtor, or so much of the same as may be strictly necessary to pay the said *taxes, penalties* and *costs.* In executing said attachment the collector or agent is hereby authorized, if necessary, to enter the house of the said debtor with the consent of said debtor, and, if the said consent is not given, then a judicial order shall be presented to enter the house of said debtor. If any such debtor shall offer any resistance to any collector or agent, after the presentation of said order from the court, he shall be guilty of a misdemeanor and, upon conviction thereof, shall be sentenced to imprisonment not exceeding one year, or to pay a fine of three hundred dollars ($300). In the event of such resistance, the local authorities, or the agents thereof, shall lend the collector or agent all the assistance required for the proper execution of the duties of the collector or agent as provided by this title."

And section 339 as amended says:

"If the personal property of any delinquent taxpayer shall be insufficient to pay the taxes, penalties and costs, owing by him to The People of Porto Rico, or if he shall have no personal property subject

to attachment and sale, the collector of the district within which such taxpayer resides, or agent, shall notify the Treasury of such facts, and any time after the receipt of such notification the Treasurer shall order the collector or agent to attach and sell enough of the real property of such delinquent taxpayer to pay said taxes, penalties and costs.''

It is suggested that these sections in connection with section 327 give the authority to the Treasurer to name a collecting agent and fix $1 as the amount of his costs. But we think it is plain that the costs to which these sections refer are the costs of the attachment proceeding. So far as we have been able to determine, the word ''costs,'' unless otherwise distinctly expressed, refers to the costs of a suit.

Bouvier's Law Dictionary says:

''Costs.—The expenses incurred by the parties in the prosecution or defense of a suit at law.

''A party can in no case recover costs from his adversary unless he can show some statute which gives him the right.

''Statutes which give costs are not to be extended beyond the letter, but are to be construed strictly.''

Under the word ''cost'' in the Century Dictionary:

''In law.—(*a*) The sums fixed by law or allowed by the court for charges in a suit, awarded usually against the party losing and in favor of the party prevailing or his attorney. (*b*) The sum which the law allows to the attorney to be paid by his client.''

What costs may be recovered is determined by section 342 as amended, which provides:

''Upon the return of said order and certificate, the collector or agent shall serve notice upon the owner of said property in the manner prescribed in section 336 of this title; that if all the taxes, penalties and costs owing by said owner are not paid within the period hereinafter prescribed for advertising the sale of said property, the same will be sold at public auction. The said advertisement shall be published at least twice a week for a period of three weeks in a

newspaper circulating in the local district in which said property is located, and notices to a similar effect shall also be posted *and the cost of such advertising and posting shall be collected as a part of the costs of sale, and paid to the Treasurer.* The collector or agent shall preserve copies of such notice and paper in which said advertisement appeared, and the same shall be *prima facie* evidence of the proper advertisement of such sale."

No other costs are authorized by law.

There are other considerations which apply. By section 288 of the Political Code as amended by the Act of March 10, 1904, the Treasurer is authorized to appoint internal revenue agents at large, for the purpose of securing proper assessment and inspection in the field, of payment of the property, excise and inheritance taxes. Their salaries are to be fixed by law and a per diem may also be allowed them. By regulation the Treasurer could make it the duty of these officials to do what is sought to be done by another special agent under special circulars of the Treasurer, should he deem it expedient. But no notification to a delinquent taxpayer is required, as by virtue of section 331 as amended by the Acts of March 10, 1904, and March 14, 1907, no demand for taxes is necessary, but it is the duty of every person subject to taxation to attend at the office of the collector and pay his taxes.

There was no authority in law for the imposition of this charge of $1 and the smallness of the amount makes no difference. We think the injunction should have been granted and the order of the District Court of San Juan is reversed with instructions to grant the injunction as prayed.

*Reversed.*

Chief Justice Hernández and Justices Figueras and MacLeary concurred.

Mr. Justice del Toro did not take part in the decision of this case.